## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRACY MARROW,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-1690** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SUPERINTENDENT** | : | |
| **LAWLER, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court are motions for summary judgment (Doc. Nos. 58, 60) filed by *pro se* Plaintiff Tracy Marrow ("Plaintiff") and Defendants Barkley, Granlund, UM Granlund, Marhelko, McKinney, Brittain, Lawler, and Wolfe. The motions are fully briefed and ripe for disposition.

## I.     BACKGROUND

Plaintiff initiated the above-captioned action on October 1, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants. (Doc. No. 1.) The Court granted Plaintiff leave to file an amended complaint (Doc. No. 21) on January 8, 2020 (Doc. No. 20). Plaintiff is currently incarcerated under Department of Corrections ("DOC") number MV-5624. (Doc. No. 21 at 2.) He was previously incarcerated under DOC numbers BG-4076 and DA-5439. (*Id.* at 4.) In his amended complaint, Plaintiff alleges that Defendants McKinney and Granlund miscalculated his one sentence by changing a four (4)-year sentence of suspended probation to be

a sentence of one (1) to four (4) years of incarceration. (*Id.* at 1.) Plaintiff maintains that the Pennsylvania Board of Probation and Parole ("PBPP") has illegally extended his maximum sentence date under BG-4076 by seventeen (17) years. (*Id.*) Plaintiff asked Defendant Wolfe about this issue, and she responded that "it was due to new convictions." (*Id.* at 2.) Plaintiff alleges that the maximum time he could have received due to new convictions under BG-4076 was five (5), not seventeen (17), years. (*Id.*) Plaintiff also faults Defendant Wolfe for not providing him with sentencing status sheets from 1990 through 1998. (*Id.*) He submitted a grievance asking for administrative review, and his grievance was denied. (*Id.*) Plaintiff appealed the matter to Defendant Brittain, and she denied the appeal. (*Id.*) Plaintiff also wrote to the PBPP and alleges that Defendant Barkley never responded to his letter. (*Id.*)

Plaintiff suggests that previously, he was twice released while serving "hit time" while asserting "res judicata and fraud claims." (*Id.* at 4.) He maintains that Defendants "were made aware of the miscalculation" and "never even attempted to rectify the issue." (*Id.* at 6.) At some point, Plaintiff was extradited to New Jersey to serve a sentence there. (*Id.*) He alleges that when he was returned to Pennsylvania, he was forced to serve an eighteen (18)-month parole violation sentence for a second time. (*Id.*) He maintains further that while in New Jersey, his

sentence under BG-4076 was "at a standstill for 22 months, when his time should have continued to run via parole." (*Id.*) Plaintiff also alleges that Defendants do not have a valid sentencing order for the one (1) to four (4) year sentence mentioned above and, therefore, have no authority to hold him for that sentence. (*Id.* at 8-9.) He asserts that the "illegal 17 [years]" he has served under BG-4076 should be credited to his sentence under MV-5624. (*Id.* at 2.)

Based on the foregoing, Plaintiff alleges that Defendants have committed deliberate indifference in violation of his Eighth Amendment rights. (*Id.* at 2-3, 7.) He also asserts state law tort claims of fraud, negligence, false imprisonment, and intentional infliction of emotional distress. (*Id.* at 2-4.) As relief, Plaintiff seeks an administrative review, copies of his sentencing status sheets, a recalculation of his sentence, and damages. (*Id.* at 3.)

On June 22, 2020, Defendants Granlund, UM Granlund, Lawler, Marhelko, McKinney, Brittain, and Wolfe filed a motion to dismiss (Doc. No. 39) Plaintiff's amended complaint. In a Memorandum and Order dated July 23, 2020, the Court granted in part and denied in part their motion to dismiss. (Doc. Nos. 42, 43.) Specifically, the Court granted the motion with respect to Plaintiff's state law tort claims, denied it with respect to Plaintiff's Eighth Amendment claim, and directed those Defendants to file an answer within fourteen (14) days. (Doc. No. 43.) On

July 28, 2020, Defendant Barkley filed a motion to dismiss. (Doc. No. 45.) In a Memorandum and Order dated August 20, 2021, the Court granted in part and denied in part the motion to dismiss for the same reasons set forth above. (Doc. Nos. 50, 51.) The Court directed the parties to complete discovery by February 5, 2021. (Doc. No. 51.)

Plaintiff filed his motion for summary judgment and brief in support thereof (Doc. Nos. 58,59) on March 30, 2021. Defendants filed their motion for summary judgment and supporting materials on April 9 and 15, 2021. (Doc. Nos. 60, 61, 62, 63.) Defendants argue, *inter alia*, that Plaintiff failed to exhaust his administrative remedies with respect to certain claims. (Doc. No. 62.) In its April 15, 2021 Order, the Court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (Doc. No. 64.) Accordingly, the Court directed Plaintiff to respond to Defendants' motion within thirty (30) days. (*Id.*) Defendants filed their brief in opposition to Plaintiff's motion on April 20, 2021. (Doc. No. 65.) Plaintiff filed his brief in opposition to Defendants' motion on April 22, 2021. (Doc. No. 66.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may

not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party

opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

"The rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine

issues of material fact exist." *Muhammad v. Martin*, No. 3:19-cv-1316, 2021 WL 832645, at *2 (M.D. Pa. Mar. 4, 2021) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). "[E]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *See Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

## III. STATEMENT OF MATERIAL FACTS[1]

Plaintiff is currently incarcerated at the State Correctional Institution in

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." *See* M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *See id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 61.)

Plaintiff included a "relevant procedural and facts" section in his motion for summary judgment. (Doc. No. 58.)This section, however, does not fully comply with Local Rule 56.1 because it primarily consists of legal allegations and conclusions. The Court, therefore, will only considered the facts presented by Plaintiff that are properly supported by record citations and do not consist of such allegations and conclusions. *See Coit v. Fisher*, No. 1:18-cv-2439, 2020 WL 4260762, at *2 n.3 (M.D. Pa. July 24, 2020) (citing *Lynch v. Ducasse*, No. 3:18-cv-2044, 2020 WL 3547375, at *2 (M.D. Pa. June 30, 2020)). Moreover, Plaintiff has not filed a responsive statement to Defendants' Rule 56.1 statement of facts. Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

Frackville, Pennsylvania ("SCI Frackville"). (Doc. No. 61 ¶ 1.) His "current DOC number is MV5624, but he was previously incarcerated under DOC numbers BG4076 and DA5439." (*Id.* ¶ 2.) In his amended complaint, Plaintiff "alleges that Defendants McKinney and Granlund miscalculated his sentence by changing a four (4)-year sentence of suspended probation to be a sentence of one (1) to four (4) years of incarceration." (*Id.* ¶ 4.) He also asserts that "the Pennsylvania Parole Board ('PPB') illegally extended his maximum sentence date under BG4076 by seventeen (17) years." (*Id.* ¶ 5.) Plaintiff "alleges that the maximum time he could have received due to new convictions under BG5076 was five (5), not seventeen (17) years." (*Id.* ¶ 6.)

Plaintiff also argues that Defendants Wolfe, Brittain, and Barkley "knew he wanted copies of his sentencing status sheets but did not provide them to him." (*Id.* ¶ 7.) He "maintains that when he was extradited to New Jersey to serve a sentenced there, he should've been receiving credit time toward his Pennsylvania sentences as well as his New Jersey sentence." (*Id.* ¶ 8.) Plaintiff asserts that Defendants "do not have a valid sentencing order for the one (1) to four (4) year sentence mentioned above and, therefore, have no authority to hold him for that sentence." (*Id.* ¶ 9.) He "argues that the 'illegal 17 [years]' he has served under BG4076 should be credited to his sentence under MV5624." (*Id.* ¶ 10.) Plaintiff seeks "a recalculation of his

9

sentences, both previous and current," $500,000.00 in compensatory damages for illegal confinement, and $5,000.00 a day from all Defendants. (*Id.* ¶¶ 13-14.)

"Plaintiff has a very long and extensive criminal history; he raises cases in his amended complaint going back to 1994." (*Id.* ¶ 15.) He is "currently incarcerated on one criminal docket which was aggregated with one parole violation." (*Id.* ¶ 16.) On December 7, 2009, "Plaintiff pled guilty at docket CP-51-CR-0012950-2008 to Escape from Detention and received a sentence of one (1) year, six (6) months to five (5) years of incarceration in a state correctional institution." (*Id.* ¶ 17.) He "received credit on that sentence from September 16, 2008 to October 20, 2008." (*Id.* ¶ 18.) Plaintiff was "committed to the DOC at Number BG4076 to serve his sentence with an original minimum date of May 2, 2011 and an original maximum date of November 2, 2014." (*Id.* ¶ 19.) On January 5, 2012, Plaintiff "was released on parole on this docket." (*Id.* ¶ 20.) He signed release papers stating: "If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole." (*Id.*)

On February 2, 2012, Plaintiff left the Kintock Erie Community Corrections Center and failed to return. (*Id.* ¶ 21.) "A parole detainer was issued on May 13,

2012 and Plaintiff was picked up by parole agents on the same day." (*Id.* ¶ 22.) He remained delinquent from February 2, 2012 until May 13, 2012. (*Id.* ¶ 23.) "On May 8, 2014, Plaintiff waived his right to a parole violation hearing and to counsel." (*Id.* ¶ 24.) His "parole was revoked and he was recommitted as a convicted parole violator due to the new convictions listed below." (*Id.* ¶ 25.) He "was sentenced to serve 30 months, and his time at liberty on parole was not credited." (*Id.* ¶ 26.) Since Plaintiff "still owed 2 years, 9 months, and 28 days of back-time on his original sentence, that time was added to his original maximum to create a new maximum date of January 27, 2017." (*Id.* ¶ 27.)

On February 26, 2014, "Plaintiff pled *nolo contendere* at docket CP-51-CR-0006387-2012 to two robberies and related offenses." (*Id.* ¶ 28.) On April 1, 2014, he was sentenced to an "aggregate sentence of eight (8) years, six (6) months to twenty (20) years of incarceration in a state correctional institution." (*Id.* ¶ 29.) Plaintiff "received credit from May 13, 2012 (date of arrest) until April 1, 2014 (the date of sentence)." (*Id.* ¶ 30.) He "was committed to the DOC at Number MV5624 to serve that sentence." (*Id.* ¶ 31.) "The sentence was effective on January 28, 2017, the date the parole sentence above ended; this resulted in a minimum date of September 11, 2023 and a maximum date of March 11, 2035." (*Id.* ¶ 32.)

The DOC has an inmate grievance system policy. (*Id.* ¶ 33.) "DC-ADM 804

provides a multi-step administrative grievance appeal process that was established to ensure that inmates have an avenue through which to resolve issues relating to their incarceration." (*Id.* ¶ 34.) Under DC-ADM 804, "inmates first file grievances with the Facility Grievance Coordinator at the facility where the events upon which the complaint is based occurred." (*Id.* ¶ 35.) If the inmate is unsatisfied with the "initial review of his or her grievance, he or she may file an appeal of the Initial Review Response with the Facility Manager (Superintendent)." (*Id.* ¶ 36.) After receiving a decision from the Superintendent, "the inmate may appeal that decision to Final Review by the Secretary's Office of Inmates Grievances and Appeals ('SOIGA')." (*Id.* ¶ 37.)

Inmates are provided notice of the grievance policy "and the requirements they must meet in grieving their issues" in the DOC Inmate Handbook. (*Id.* ¶ 38.) The version of DC-ADM 804 at the time required the following information to be included in a grievance: (1) a statement of facts, including the date, time, and location of events; (2) identification of the individuals directly involved; (3) "any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law"; and (4) the specific relief sought, including any compensation or other legal relief. (*Id.* ¶ 39.)

SOIGA "handles the Final Review of inmate grievances, the third and final

step of the Department's Grievance Policy." (*Id.* ¶ 40.) "Keri Moore is employed as the Assistant Chief for SOIGA and her responsibilities include being a custodian for inmate grievance records which are filed to Final Review with SOIGA." (*Id.* ¶ 41.) She "has access to the grievance tracking system which outlines all the grievances filed by Plaintiff." (*Id.* ¶ 42.) She "reviewed Plaintiff's grievance appeal records and found grievance 811831 that Plaintiff refers to in his amended complaint." (*Id.* ¶ 43.) The grievance "does not name any of the Defendants in this litigation" and "does not seek money damages." (*Id.* ¶¶ 44-45.)

## IV. DISCUSSION

In its Memoranda granting in part and denying in part Defendants' motions to dismiss, the Court noted that this action would proceed on Plaintiff's Eighth Amendment claim that Defendants demonstrated deliberate indifference by allegedly miscalculating or failing to correct an alleged miscalculation of his sentence, resulting in him allegedly serving time beyond his sentence's termination. (Doc. Nos. 42, 50.) Plaintiff suggests that he is entitled to summary judgment because Defendants illegally extended his maximum date on several occasions. (Doc. No. 59 at 1.) Defendants assert they are entitled to summary judgment because: (1) the statute of limitations has run as to Plaintiff's Eighth Amendment claims relating to anything other than the current sentences he is serving; (2) Plaintiff

13

failed to exhaust his administrative remedies as to Defendants Barkley, Granlund, UM Granlund, Lawler, Marhelko, and McKinney and as to his claims for money damages; and (3) Defendants followed court orders and correctly calculated Plaintiff's sentences. (Doc. No. 62 at 5.)

## A. Administrative Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

14

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. *See id.* Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to

excuse [an inmate's] failure to exhaust as the statute requires." *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t

is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *See id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by
> prison staff, an inmate must show (1) that the misrepresentation is one

which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants maintain that Defendants Barkley, Granlund, UM Granlund, Lawler, Marhelko, and McKinney are entitled to summary judgment because they were not named in Plaintiff's administrative grievances. (Doc. No. 62 at 11.) Defendants also maintain that Plaintiff failed to exhaust his remedies as to any monetary damages. (*Id.*) With respect to proper exhaustion under the PLRA, "it is the prison's requirements, [] not the [Act], that define the boundaries of proper exhaustion." *Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)). As noted *supra*, DC-ADM 804 requires that a grievance, *inter alia*, "identify individuals directly involved in the event(s)" as well as the specific relief sought "[i]f the inmate desire compensation or other legal relief normally available from a court." (Doc. No. 61 ¶ 39.)

A review of Grievance #811831 indicates that Plaintiff did not name any of the Defendants in his initial grievance. (Doc. No. 63-9 at 5.) The initial response to his grievance named Defendant Wolfe. (*Id.* at 6.) His first level of appeal was responded to by Defendant Brittain. (*Id.* at 8.) Moreover, at no time did Plaintiff request any monetary damages. (*Id.* at 1-10.) Because Plaintiff failed to request

monetary damages in his grievance proceedings, he did not properly exhaust his claims for such relief. *See Johnson v. Wireman*, 809 F. App'x 97, 99 (3d Cir. 2020); *Murray v. Wetzel*, No. 1:17-cv-1637, 2021 WL 1173001, at *7 (M.D. Pa. Mar. 29, 2021). Moreover, the Third Circuit has noted that "a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pa. Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005). In the instant case, Plaintiff did not identify Defendants Barkley, Granlund, UM Granlund, Lawler, Marhelko, and McKinney in Grievance #811831, and he did not "identify any harm perpetuated by them" in his grievance. *Watson v. Wingard*, 782 F. App'x 214, 217 (3d Cir. 2019). Thus, Plaintiff failed to exhaust his claims against these Defendants as well.

In his response, Plaintiff admits that he did not name the Defendants and did not seek damages within his grievances. (Doc. No. 66 at 4.) He asserts however, that Defendants waived their right to assert a failure to exhaust defense by failing to raise it in their prior motions to dismiss. (*Id.*) However, an exhaustion defense is "not among the several enumerated defenses that are waived by omitting them from an initial motion to dismiss." *Jaludi v. Citigroup*, No. 3:15-cv-2076, 2020 WL 7086142, at *5 (M.D. Pa. Aug. 12, 2020), *Report and Recommendation adopted*, 2020 WL 7075245 (M.D. Pa. Dec. 3, 2020). Moreover, as the Court explicitly noted

in its April 15, 2021 Order, the Court placed the parties on notice that it would consider exhaustion in its role as fact-finder and, therefore, that it was proper for the issue to be considered on summary judgment. (Doc. No. 64.) The record before the Court clearly establishes that Plaintiff did not exhaust his claims against Defendants Barkley, Granlund, UM Granlund, Lawler, Marhelko, and McKinney and did not exhaust his claims for monetary damages. Defendants, therefore, are entitled to summary judgment with respect to Plaintiff's claims against Defendants Barkley, Granlund, UM Granlund, Lawler, Marhelko, and McKinney and his claims for monetary damages.

**B.    Eighth Amendment Claim**

Plaintiff maintains that Defendants demonstrated deliberate indifference, in violation of the Eighth Amendment, by allegedly miscalculating or failing to correct an alleged miscalculation of his sentence, resulting in him allegedly serving time beyond his sentence's termination. The detention of an inmate "beyond the termination of his sentence . . . violate[s] the [E]ighth [A]mendment's proscription against cruel and unusual punishment" if the incarceration [is] without penological justification." *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993). To establish an Eighth Amendment violation for over-detention, a plaintiff must demonstrate that:

> "(1) a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be,

inflicted; (2) the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention."

*Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (citing *Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010)). To determine whether a prison official acted with deliberate indifference, courts within the Third Circuit look to "the scope of the official's duties and the role the official played in the life of the prison." *Montanez*, 603 F.3d at 252. "For over-detention claims, deliberate indifference is typically shown 'in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation.'" *Andrew v. Buskirk*, 775 F. App'x 737, 742 (3d Cir. 2019) (quoting *Moore*, 986 F.2d at 686.

Upon review of the record, the Court concludes that there is no genuine issue of material fact as to whether Defendants violated Plaintiff's Eighth Amendment rights by demonstrating deliberate indifference to his claims of over-incarceration. In his amended complaint, Plaintiff alleges that Defendants McKinney and Granlund miscalculated a sentence by changing a four (4)-year sentence of suspended probation to a sentence of one (1) to four (4) years of incarceration. (Doc. No. 21 at 1, 5.) Notwithstanding the fact that Plaintiff failed to exhaust his administrative

remedies as to his claims against Defendants McKinney and Granlund, nothing in the record before the Court, aside from Plaintiff's self-serving allegations, support a conclusion that Defendants McKinney and Granlund deliberately miscalculated Plaintiff's sentence. Likewise, nothing in the record supports Plaintiff's contention that the PBBB illegally extended his maximum sentence date under BG-4076 by seventeen (17) years. (*Id.*) Plaintiff also contends that when he was extradited to New Jersey to serve a sentence there, he should have continued to receive credit toward his Pennsylvania sentences as well as his New Jersey sentence. (*Id.* at 6.) However, doing so would have resulted in an unlawful application of double time credit. *See* 42 Pa. Cons. Stat. § 9760(4) (noting that credit shall be given for time "that has not been credited against another sentence"); *Taglienti v. Dep't of Corr. of Commonwealth of Pa.*, 806 A.2d 988, 992 (Pa. Cmwlth. Ct. 2002) (noting that § 9760(4) "makes it clear that time credit on a sentence can only be given when it has not already been credited against another sentence"). Thus, Defendants could not lawfully have calculated Plaintiff's Pennsylvania sentences to credit him for time that was already credited to his New Jersey sentence.

The Third Circuit has set forth the following relevant factors to consider when analyzing an Eighth Amendment over-detention claim, noting that a violation may be found only when officials:

> (1) believe an inmate's inquiry may well have merit, (2) know that the matter needed to be clarified, (3) believe that the inmate must rely on their efforts alone to rectify the problem, (4) do not follow the relevant procedures mandated by the Pennsylvania Bureau of Correction, (5) take no other remedial action, and (6) do not inform the inmate other action he might take to resolve his problem.

*Von Schlichten v. Mooney*, No. 1:16-cv-1473, 2018 WL 3707326, at *9 (M.D. Pa. Aug. 3, 2018) (citing *Sample v. Diecks*, 885 F.2d 1099, 1111 (3d Cir. 1989)). In the instant case, the record before the Court indicates that Defendants investigated Plaintiff's claims alleging a sentencing miscalculation. Plaintiff's records were reviewed, and he was informed that he had "violated [his] parole several times under BG4076 by committing new crimes." (Doc. No. 63-9 at 1.) Plaintiff was also informed that PBPP, not the DOC, was responsible for establishing his parole violator maximum date and for the award of any credit for time spent on liberty. (*Id.*) After a review of Plaintiff's records, it was determined that his sentences had been properly calculated and that any parole-related calculation issues would need to be raised with the PBPP. From the record before it, the Court cannot conclude that this is a case where "prison officials were put on notice and simply refused to investigate a prisoner's claim of sentence miscalculation." *Moore*, 986 F.2d at 686.

The Court, therefore, will grant summary judgment to Defendants with respect to Plaintiff's Eighth Amendment over-incarceration claims.[2]

## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment (Doc. No. 60) and deny Plaintiff's motion for summary judgment (Doc. No. 58).  An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Date: May 12, 2021

---

[2] Because the Court has concluded that Defendants are entitled to summary judgment because of Plaintiff's failure to exhaust and because his Eighth Amendment over-incarceration claims lack merit, the Court declines to address Defendants' argument regarding the statute of limitations.